UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMERICAN BUILDERS INSURANCE COMPANY, §§§§<br>*Plaintiff,* §<br>§<br>v. § Civil Action No. 4:25-cv-05408<br>§<br>QCB CONSTRUCTION LLC dba §<br>QCB CUSTOM HOMES, MI- §<br>CHAEL LEWIS, and ANITA LEWIS, §<br>*Defendants.* § | |

## Complaint for Declaratory Judgment

Plaintiff American Builders Insurance Company files this complaint for declaratory judgment and respectfully shows the Court the following:

### I. Parties

1. American Builders Insurance Company ("Builders") is a Delaware corporation with its principal place of business in Atlanta, Georgia. Builders is a citizen of Delaware and Georgia but not Texas.

2. QCB Construction LLC dba QCB Custom Homes is a Texas limited liability company whose managing members are Quatro Brooks and Kimberly Brooks, both of whom are individuals domiciled in Magnolia, Montgomery County, Texas, according to Texas Secretary of State records and Montgomery County property records. Because Quatro and Kimberly Brooks are Texas citizens, QCB is a citizen of Texas but not Delaware or Georgia. It may be served with process through its registered agent, Quatro Brooks, at 30238 Tudor Way, Magnolia, Texas 77355, or wherever he may be found.

3. Michael Lewis is an individual domiciled in Montgomery, Montgomery County, Texas, based on Montgomery County property records and filings in the

Arbitration. Lewis is a citizen of Texas but not Delaware or Georgia. He may be served with process at 23405 Cannondale Loop, Montgomery, Texas 77316, or wherever he may be found.

4. Anita Lewis is an individual domiciled in Montgomery, Montgomery County, Texas, based on Montgomery County property records and filings in the Arbitration. Lewis is a citizen of Texas but not Delaware or Georgia. She may be served with process at 23405 Cannondale Loop, Montgomery, Texas 77316, or wherever she may be found.

## II. Jurisdiction & Venue

5. Builders brings this declaratory-judgment action regarding its duty to indemnify QCB under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201, 2202. As judgment creditors, the Lewises are indispensable parties and named as defendants for the purpose of ensuring that a no-coverage judgment is binding on them.

6. Builders' citizenship (Delaware and Georgia) is completely diverse from the defendants' citizenship (Texas). Additionally, the amount in controversy exceeds $75,000, exclusive of interest and costs, because the Lewises were awarded sums totaling at least $671,683.84 in the Arbitration, which gives rise to this insurance-coverage action. Hence, the Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1).

7. The Court has personal jurisdiction over QCB and the Lewises because they are Texas citizens.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Arbitration occurred in Montgomery County, Texas.

### III. Factual Background

9. This action arises out of an underlying arbitration styled *Michael and Anita Lewis v. QCB Construction LLC dba QCB Custom Homes*, Case No. 01-24-0008-2098 in the American Arbitration Association ("Arbitration"), in which the arbitrator awarded sums to the Lewises that are not covered by QCB's insurance.

#### A. Arbitration Claims & Award

10. On February 3, 2016, the Lewises and QCB entered a Residential Construction Contract – Cost Plus for the construction of the residence at 23405 Cannondale Loop, Montgomery, Texas 77316.

11. The residence is a 2-story structure with wood framing, an exterior cladding system composed of adhered stone veneer and stucco veneer, interior walls and ceilings composed of gypsum board, concrete tiles covering the hip-, gable-, and turret-style roofs, and a single-ply thermoplastic polyolefin membrane covering the monoslope roof transition. QCB completed construction of the residence in or about April 2017.



12. From November 2016 to February 2023, the Lewises repeatedly notified QCB and its subcontractor, Strata Roofing & Construction LLC, about roof leaks. QCB and Strata attempted multiple roof repairs, without sustained success.

13. On August 23, 2023, the Lewises, through counsel, sent QCB notice of their claims pursuant to the Residential Construction Liability Act and Deceptive Trade Practices Act, recounting the repeated roof leaks and claiming that the roof was designed and constructed with significant, egregious deficiencies. The notice further explained that the residence was suffering from mold growth due to the roof leaks.

14. On August 25, 2023, the Lewises filed suit against QCB in the 257th District Court of Montgomery County, Texas, on the basis that QCB defectively constructed their residence. That suit was abated and compelled to arbitration on September 16, 2024. The Lewises initiated the Arbitration against QCB regarding the defective construction on October 1, 2024, seeking costs to cure the construction defects, temporary-housing costs, engineering and consulting fees, attorney fees, arbitration costs, and judgment interest.

15. After a final evidentiary hearing, the arbitrator issued an award totaling $671,683.84 in favor of the Lewises on August 22, 2025. He spread the awarded sum among several categories: $355,411.03 to cure construction defects, which he further spread among mitigation and remediation ($29,555.92), roof repairs ($259,283.05), and restoration general conditions ($66,572.06); $51,000.00 for reasonable temporary-housing expenses during the repair period; $53,311.65 for prejudgment interest; and $211,961.16 for attorney fees.

16. The arbitrator found that QCB constructed the house's roofing system in a defective manner and failed to construct and perform warranty repairs to the roof pursuant to applicable building codes, manufacturer instructions, and usual and customary industry standards. As a result, the arbitrator determined that QCB breached

its contract with the Lewises, breached its implied warranty of good and workmanlike construction, and constructed and repaired the house's roof negligently.

17. The arbitrator also found that the Lewises' claims accrued in December 2022 when they discovered that QCB's and Strata's roof repairs failed, as evidenced by leaks in the house.

18. The arbitrator's findings and award align with the testimony and opinions provided by the Lewises' expert, Andrew Feenstra. For example, regarding the Lewises' contract claim, the arbitrator cited Feenstra's testimony that damage to the residence was caused by the defective roofing system and tile roofing installation deficiencies as evidence that QCB committed a material breach of contract. The arbitrator also agreed with Feenstra that the constructed and repaired roof concealed construction defects.

19. The arbitrator's findings and award also align with the testimony and opinions provided by the Lewises' expert, Dan Kessinger. Namely, the Lewises' claimed damages were reflected in the repair-cost estimate prepared by Kessinger and introduced as evidence during the final evidentiary hearing. The itemized costs in that estimate are separated into separate phases, sections, and subsections, including—critically—"Mitigation and Remediation Phase" totaling $29,555.92, "Roof" under the "Restoration Phase" totaling $259,283.05, and "General Conditions" under the "Restoration Phase" totaling $66,572.06. They are also premised on the mold-remediation protocol prepared by Blaine Reagan of Reagan Environmental, which the Lewises and QCB stipulated as being reasonable and necessary, and inspection reports and estimates prepared by Feenstra and Andy Kelly of 314 Roofing.

20. In addition to the sums above, the arbitrator awarded postjudgment interest on the full award at 7.5%, compounded annually, beginning on September 22, 2025. For the first year, postjudgment interest accrues at $138.02 per day.

21. The arbitrator's award is enclosed as Exhibit A.

**B. Builders' Coverage**

22. Builders issued Policy No. PKG 0124928 to QCB that was in effect from April 27, 2016 – April 27, 2023 (specifically, renewals -04 through -10). Because there is a negligible difference between the policies' terms, if any, the word "Policy" herein refers to all policies, unless specified otherwise. The Policy contains a $1,000,000 Each Occurrence Limit.

23. The Policy's insuring agreement grants coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence" during the applicable policy period, subject to certain definitions, exclusions, conditions, and endorsements:

> SECTION I – COVERAGES
>
> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>       (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>       (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>    
>    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>    
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>
> . . . . .
>
> SECTION V – DEFINITIONS
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> …
>
> 17. "Property damage" means:
>
>    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
>    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> For the purposes of this insurance, electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.
>
> CG 00 01 04 13

24. CGL insurance is not designed to guarantee an insured's work. The Policy excludes damage to and costs to repair an insured's defective work and products:

> SECTION I – COVERAGES
>
> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 2. Exclusions
>
>    This insurance does not apply to:

    j.  Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed in a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

CG 00 01 04 13

. . . . .

### TEXAS FAULTY WORK EXCLUSION WITH RESULTING DAMAGE COVERAGE

This endorsement modifies insurance provided under the following:

  COMMERCIAL GENERAL LIABILITY COVERAGE FORM

In regard only to "your work" in connection with residential structures, Exclusion l. Damage to Your Work of Section I – Coverages, Coverage A. Bodily Injury and Property Damage Liability, 2. Exclusions is deleted and replaced with:

    l.  Faulty, Defective or Poor Workmanship in Your Work

This insurance does not apply to any claim or "suit" for the cost of repair, replacement, adjustment, removal, loss of use, inspection, disposal, or otherwise making good any faulty, defective or poor workmanship in "your work" for which any insured or any insured's employees, contractors, or subcontractors may be liable.

This exclusion does not apply to "property damage" sustained by any other property that is caused by the faulty, defective or poor workmanship in "your work".

This exclusion applies only to residential structures for which coverage is not otherwise excluded under this insurance.

GL RFWETX 01 15

25. The Policy also excludes and/or limits coverage for mold-related damage and remediation costs:

FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

  2.  Exclusions
This insurance does not apply to:

Fungi Or Bacteria
  a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
  b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

…

C. The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CG 21 67 12 04

. . . . .

## LIMITED FUNGI OR BACTERIA COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SCHEDULE

| Fungi and Bacteria Each Occurrence Limit and Aggregate Limit | Fungi and Bacteria Per Occurrence Deductible For This Coverage Part |
|---|---|
| $2,500.00 / TX | $2,000 |

This insurance provided under Section I – Coverage A – Bodily Injury and Property Damage Liability as modified by the Fungi Or Bacteria Exclusion is hereby extended to provide insurance for (a) "property damage" which would not have occurred, in whole or part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any fungi or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage; and (b) any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of fungi or bacteria, by any insured or by any other person or entity.

A. For any purposes of this Limited Fungi or Bacteria Liability insurance only, Paragraph 1.a., 1.b., 1.c., 1.d., and 1.e. of Section I – Supplementary Payments – Coverages A and B, are deleted: DEFENSE EXPENSES AND OTHER COSTS PROVIDED UNDER THE DELETED PARAGRAPHS ARE INCLUDED WITHIN THE LIMIT OF LIABILITY SHOWN IN THE SCHEDULE ABOVE.

B. For purposes of this Limited Fungi or Bacteria Liability insurance only, Section III – Limits of Insurance is deleted and replaced by the following:

   1. The Limits of Insurance shown in the Limited Fungi or Bacteria Liability Schedule above and the provisions below fix the most we will pay regardless of the number of:

      a. Insureds;

      b. Claims made or "suit" brought; or

      c. Persons or organizations making claims or bringing "suits."

2. The Aggregate Limit shown in the Limited Fungi or Bacteria Liability Schedule above is the most we will pay for the sum of:
   a. Damages under Coverage A. for "property damage" insured under this endorsement; and
   b. Any amounts that, but for Paragraph A. above, would have been payable under Paragraph 1.a., 1.b., 1.c., 1.d., and 1.e. of Section I – Supplementary Payments – Coverages A and B.
3. The Products-Completed Operations Aggregate Limit for "property damage" insured under this extension of Coverage A. for Limited Fungi or Bacteria Liability is the same as and included within the Aggregate Limit shown in Schedule above, and subject to the terms of this endorsement, is the most we will pay for such "property damage."
4. Subject to 2. and 3. above, whichever applies, the Each Occurrence Limit shown in the Schedule above is the most we will pay for the sum of:
   a. Damages under Coverage A.;
   b. Any amounts that but for Paragraph A. above, would have been payable under Paragraph 1.a., 1.b., 1.c., 1.d., and 1.e. of Section I – Supplementary Payments – Coverages A and B.
   
   because of "property damage" insured under this extension of Coverage A. for Limited Fungi or Bacteria Liability arising out of one "occurrence."
5. Subject to 4. above, The Damage To Premises Rented To You Limit for "property damage" insured under this extension of Coverage A. for Limited Fungi or Bacteria Liability is the same as the Aggregate Limit shown in the Schedule above, and subject to the terms of this endorsement, is the most we will pay for such "property damage."

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after the issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limits of insurance.

GL FB 01 09

26. In the event that an insured is liable for covered damages, the Policy limits the costs, fees, and interest that Builders owes:

SECTION I – COVERAGES

SUPPLEMENTARY PAYMENTS – COVERAGE A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   …

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

   CG 00 01 04 13

27. Builders defended QCB in the Arbitration subject to reserved rights listed in a letter dated August 29, 2023. Those reserved rights include Builders' right to file an action to determine its obligations under the Policy and assert the defenses cited above, among others.

### IV. Cause of Action: Declaratory Judgment

28. All preceding paragraphs are incorporated herein by reference.

29. Builders seeks a declaration that it has no duty to indemnify QCB for the sums awarded to the Lewises in the Arbitration or, alternatively, a declaration that Builders has already satisfied its duty to indemnify QCB for the sums awarded to the Lewises in the Arbitration. Again, as judgment creditors, the Lewises are indispensable parties and named as defendants for the purpose of ensuring that a no-coverage judgment is binding on them.

30. Anita Lewis testified during the final evidentiary hearing that roof leaks and framing discoloration caused by same started during construction and that she or Michael Lewis contemporaneously notified QCB's Quatro Brooks. To the extent

that the award regards "property damage," that damage started in late 2016 or early 2017 while QCB was still constructing the Lewises' house. Such "property damage," including any continuation, change, or resumption of that damage after QCB completed construction, is excluded by the Damage to Property Exclusion. Because any "property damage" stems from the roof leaks, all damages, fees, and interest awarded to the Lewises are excluded.

31.  Additionally, or alternatively, the costs to cure construction defects that the arbitrator awarded are costs to mitigate and remedy mold growth and costs to repair, remove, replace, or otherwise remedy QCB's defective work. All such costs are either subject to the limited coverage provided by the Limited Fungi or Bacteria Coverage endorsement, which has been exhausted by Builders' payment of QCB's defense costs, or excluded by the Texas Faulty Work Exclusion.

32.  Additionally, or alternatively, the temporary-housing costs during the repair period that the arbitrator awarded are also costs that stem from the construction defects to be cured. All such costs are either subject to the limited coverage provided by the Limited Fungi or Bacteria Coverage endorsement, which has been exhausted by Builders' payment of QCB's defense costs, or excluded by the Texas Faulty Work Exclusion.

33.  Additionally, or alternatively, the prejudgment interest that the arbitrator awarded is calculated solely from the costs to cure construction defects. The Policy's Supplementary Payments provision only obligates Builders to pay prejudgment interest "on that part of the judgment we pay," meaning the part that is covered. Because all costs to cure construction defects are either subject to the limited coverage provided by the Limited Fungi or Bacteria Coverage endorsement, which has been exhausted by Builders' payment of QCB's defense costs, or excluded by the Texas Faulty Work Exclusion, Builders has no obligation to pay the prejudgment interest awarded.

34. Additionally, or alternatively, the attorney fees that the arbitrator awarded compensate the Lewises for the fees that they incurred to prosecute their construction-defect claims. To the extent that attorney fees are damages, they are not because of "bodily injury" or "property damage" to which this insurance applies because any "property damage," costs to cure construction defects, or temporary-housing costs are either subject to the limited coverage provided by the Limited Fungi or Bacteria Coverage endorsement, which has been exhausted by Builders' payment of QCB's defense costs, or excluded by the Texas Faulty Work Exclusion. For the same reason, the attorney fees awarded are not covered.

35. Additionally, or alternatively, an insured has the burden to distinguish and apportion damages between covered and uncovered damages. If some uncertain portion of the awarded damages is covered by the Policy, QCB, or any person standing in QCB's shoes, cannot fulfill its burden, which is fatal to recovery. Hence, Builders has no duty to indemnify QCB for the amounts awarded to the Lewises.

36. Alternatively, if indemnity is owed, Builders has already satisfied its contractual obligation to QCB. On October 31, 2025, Builders sent the Lewises a written offer of payment to satisfy the portion of the award that is potentially covered by the policy, including postjudgment interest through the date of the offered payment, while maintaining that covered damages, if any, are much lower than the offered amount and reserving all rights under the Policy and applicable law. By reason of that offer of payment, Builders has no further indemnity obligation.

## V. Conclusion & Prayer

37. All preceding paragraphs are incorporated herein by reference.

38. QCB constructed a residence for the Lewises, who repeatedly complained that the roof was leaking, even after repairs. They filed suit against QCB and proceeded to obtain an award for $671,683.05 based on the arbitrator's finding that QCB installed a defective roofing system. The sums awarded compensated the

Lewises for the reasonable costs to cure the construction defects and other fees and amounts related to those defects.

39. The Policy covers certain risks. But it does not cover "property damage" to the Lewises' house arising from QCB's work while QCB was building it. It does not cover mold-related "property damage" or remediation costs if the sublimit of insurance for such damage or costs has been exhausted (and it has been so exhausted). It does not cover damage to or costs to repair QCB's defective work. It does not cover attorney fees and expenses. And it does not cover judgment interest if there is otherwise no coverage for the damages and sums awarded on which interest is calculated. The damages, fees, costs, expenses, and interest awarded to the Lewises are exactly the types that the Policy does not cover.

40. Even if some uncertain portion of the award is covered and QCB can satisfy its burden to distinguish and apportion covered and uncovered damages, Builders has already offered to pay an amount to the Lewises that exceeds Builders' potential indemnity obligation, including postjudgment interest through the date of the offer.

41. For these reasons, Builders asks the Court for:

    a. A declaration that Builders does not have a duty to indemnify QCB for the sums awarded to the Lewises in the Arbitration or, alternatively, a declaration that Builders has already satisfied its duty to indemnify QCB for the sums awarded to the Lewises in the Arbitration;

    b. court costs; and

    c. all other relief that the Court deems appropriate.

*Complaint for Declaratory Judgment*

Respectfully submitted.

SAVRICK, SCHUMANN, JOHNSON, MCGARR, KAMINSKI & SHIRLEY LLP

*/s/ William Vanderbilt*
William Vanderbilt
will@ssjmlaw.com
SBN: 24110472
S.D. Bar No. 3481498
Camille Johnson
camille@ssjmlaw.com
SBN: 10686600
S.D. Bar No. 16414
4621 Ross Avenue, Suite 300
Dallas, Texas 75204
Tel: (214) 368-1515
Fax: ((737) 273-8905
**Counsel for Plaintiff American Builders Insurance Company**